IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 23-215 |
| | ) |
| MIQUANN MORGAN-GRAHAM | ) |

**MEMORANDUM OPINION**

Presently before the Court is *pro se* Defendant Miquann Morgan-Graham's Motion to Dismiss Counts Three and Four of the Superseding Indictment[1] and his Motion to Dismiss Counts Two and Three of the Superseding Indictment (collectively, the "Dismissal Motions"), which are opposed by the Government. (Docket Nos. 119, 123, 129, 131, 132, 144). After careful consideration of the parties' respective positions, the Court finds that all of Defendant's arguments for dismissal of Counts Two, Three, and Four lack merit, thus his Dismissal Motions will be denied.

**I.   BACKGROUND**

Defendant is charged in a four-count Superseding Indictment with the following: possession with intent to distribute a quantity of fentanyl, a quantity of a mixture and substance containing detectable amounts of fentanyl and fluorofentanyl, and a quantity of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count One); carrying a firearm, which was also a machinegun, during and in relation to a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 924(c)(1)(B)(ii) (Count Two); possession of a machinegun, in violation of 18

---

[1] To be clear, relative to the Motion to Dismiss Counts Three and Four of the Superseding Indictment, Defendant filed a Reply to the Government Response thereto, (Docket No. 129), as well as a document entitled "Motion to Amend/Correct [His] Reply to Government's Response to [His] Motion to Dismiss Counts Three and Four of the Superseding Indictment." (Docket No. 131). The Court construes Defendant's Motion to Amend/Correct his Reply as a Supplement to his Reply, and it was filed on the docket accordingly.

1

U.S.C. § 922(o)(1) (Count Three); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count Four).  (Docket No. 56).

Defendant argues in his Dismissal Motions that the charges against him for allegedly violating §§ 922(g)(1), 922(o)(1), and 924(c) should be dismissed for a litany of reasons: the Government lacks jurisdiction to proceed with these charges; Congress lacks the power to regulate firearm possession in Pennsylvania because the exclusive authority to do so is left to the states; § 922(g)(1) is facially unconstitutional;[2] § 922(g)(1) violates the Commerce Clause; § 922(o)(1) is unconstitutional as applied to him and on its face; § 924(c)(1)(B)(ii) is an invalid firearm regulation; Defendant's Second, Fifth, Ninth, and Tenth Amendment rights have been violated; his right to bear arms is a fundamental right; and he has an indefeasible right to bear arms as a citizen of Pennsylvania.  (*See generally* Docket Nos. 119, 129, 131, 132).  Overall, Defendant contends that any firearm regulation is unconstitutional.  (*See* Docket No. 132 at 3) (asserting that "the United States government lacks jurisdiction to prosecute Defendant for any firearm related offense at any time").  In response, the Government advocates that all of Defendant's arguments for dismissal of the charges lack merit, and his Dismissal Motions should be denied in their entirety.  (*See generally* Docket Nos. 123, 144 at 1-12).  Defendant's Dismissal Motions are now ripe for disposition.

## II.   <u>LEGAL STANDARD</u>

Pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B), an alleged defect in the indictment "must be raised by pretrial motion if the basis for the motion is then reasonably

---

2   Although Defendant maintains that he is not raising an as-applied challenge to § 922(g)(1), (*see* Docket No. 131 at 3), he nonetheless argues, "applying the history of the Second Amendment . . . to [his] possession of firearms, the Government is in violation of [his] Second Amendment right."  (Docket No. 119 at 16).  Whether intentional or not, such an argument suggests that Defendant also is raising an as-applied challenge to § 922(g)(1).  Accordingly, given Defendant's pro se status, the Court liberally construes his Dismissal Motions and therefore addresses his challenge to § 922(g)(1) both facially and as applied to him.

available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(B).  "An indictment is defective if it alleges [a] violation of an unconstitutional statute." *United States v. Ho Ka Yung*, Crim. No. 17–14–LPS, 2018 WL 619585, at *1 (D. Del. Jan. 30, 2018) (quoting *United States v. Dean*, 670 F. Supp. 2d 457, 458 (E.D. Va. 2009) and citing *United States v. Boffa*, 513 F. Supp. 444, 459–64 (D. Del. 1980) (resolving motion to dismiss indictment where defendant alleged statute was unconstitutionally vague, overbroad, and unconstitutional as applied)).

In analyzing a Rule 12 motion to dismiss, the district court "must accept as true the factual allegations set forth in the indictment." *United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012) (abrogated on other grounds by *Rehaif v. United States*, 588 U.S. 225 (2019)).  Although the court's review generally is confined to the facts alleged in the indictment, *see United States v. Bergrin*, 650 F.3d 257, 268 (3d Cir. 2011), the Third Circuit Court of Appeals has instructed that certain facts are critical when considering an as-applied challenge to § 922(g)(1) in the criminal context, including "the predicate offenses that made [the defendant] a felon" and "the circumstances of a criminal offense . . . regardless of whether they were charged." *United States v. Moore*, 111 F.4th 266, 272, 273 (3d Cir. 2024).[3]  Against this legal standard, the Court considers Defendant's Dismissal Motions.

---

3    In *Moore*, the Court of Appeals rejected Moore's contention that only the facts alleged in the indictment could be considered in his as-applied challenge to § 922(g)(1). 111 F.4th at 272-73. As the Court of Appeals explained, an as-applied challenge requires a court to evaluate whether a statute's "application to a particular person under particular circumstances deprived that person of a constitutional right." *Id.* (quoting *United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011)).  Therefore, "[i]n order to mount a successful as-applied challenge, [Moore] must show that under these particular circumstances he was deprived of a constitutional right." *Id.* at 273 (quoting *Mitchell*, 652 F.3d at 406). "And 'these particular circumstances' include facts beyond the predicate offenses alleged in the indictment." *Id.*

### III. APPLICABLE SECOND AMENDMENT LAW

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *District of Columbia v. Heller*, 554 U.S. 570, 630, 635 (2008) and *McDonald v. City of Chicago*, 561 U.S. 742, 767-68 (2010), the Supreme Court recognized that the Second and Fourteenth Amendments protect an individual's right to possess a handgun in the home for the "core lawful purpose of self-defense." The Supreme Court stressed, however, that the right is not unlimited. *Heller*, 554 U.S. at 595. To illustrate, "[f]rom Blackstone through the 19th-century cases, commentators and courts routinely explained that the [Second Amendment] right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626. Accordingly, the Supreme Court instructed that "nothing in [*Heller*] should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 626-27. Later, in *McDonald*, the Supreme Court reiterated that its holding in *Heller* did not cast doubt on such longstanding "prohibitions on the possession of firearms by felons," among other prohibitions. *McDonald*, 561 U.S. at 786.

The Supreme Court subsequently held in *New York State Rifle & Pistol Assoc., Inc. v. Bruen*, 597 U.S. 1 (2022), that the Second and Fourteenth Amendments protect "an individual's right to carry a handgun for self-defense outside the home." *Id.* at 10. In so ruling, the Court articulated the following history-based framework for determining whether a firearm regulation is constitutional under the Second Amendment:

> [W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its

> regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id.* at 17.  As the Supreme Court explained, this framework "requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Id.* at 26.  When assessing present day firearms regulations, the historical analysis that courts must undertake "will often involve reasoning by analogy." *Id.* at 28.  To that end, "analogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*.  So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id.* at 30 (emphasis in original).  In summary, although *Bruen* altered the analytical framework for addressing Second Amendment challenges, it did not displace *Heller* or *McDonald*, including *Heller's* admonition that nothing therein "should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . ."[4]  *See Heller*, 554 U.S. at 626.

More recently, in *United States v. Rahimi*, 602 U.S. 680 (2024), the Supreme Court reiterated that "the appropriate analysis" under *Bruen* "involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." *Id.* at 692.  Under this approach, "the Second Amendment permits more than just those regulations

---

[4] In concurring and dissenting opinions in *Bruen*, six Supreme Court Justices affirmed as much.  *See Bruen*, 597 U.S. at 72 (Alito, J., concurring) ("Our holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun. . . . Nor have we disturbed anything that we said in *Heller* or *McDonald v. Chicago*, 561 U.S. 742 (2010), about restrictions that may be imposed on the possession or carrying of guns."); *see id.* at 81 (Kavanaugh, J., joined by Roberts, C.J., concurring) ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons. . . ."); *see id.* at 129 (Breyer, J., joined by Sotomayor, J., and Kagan, J., dissenting) (stating awareness that *Bruen's* holding has no impact on *Heller's* finding that banning felons from owning firearms is presumptively lawful).

identical to ones that could be found in 1791." *Id.* at 691-92.  Rather than pinpointing a perfect statutory analogue, "dead ringer," or "historical twin," *id.* at 692 (quoting *Bruen*, 597 U.S. at 30), we are to draw on "relevantly similar" historical regulations to derive "principles underlying the Second Amendment" and then ask if the modern-day regulation "comport[s] with th[ose] principles" in terms of "why and how it burdens the Second Amendment right." *Id.* at 692, 698.

In light of these principles, the Supreme Court held that the challenged statute at issue in *Rahimi*, 18 U.S.C. § 922(g)(8), which prohibits firearm possession by individuals subject to a domestic violence restraining order, does not violate the Second Amendment facially or as applied to the facts of Rahimi's case. *Rahimi*, 602 U.S. at 693.  As the Supreme Court explained, "[s]ince the founding, our Nation's firearm laws have included provisions preventing individuals who threaten physical harm to others from misusing firearms." *Id.* at 690.  Given that § 922(g)(8) applies to individuals found to threaten the physical safety of another, it "is 'relevantly similar' to those founding era regimes in both why and how it burdens the Second Amendment right." *Id.* at 698 (quoting *Bruen*, 597 U.S. at 29).

Finally, in *Range v. Attorney Gen. of U.S.*, 124 F.4th 218 (3d Cir. 2024) (*Range II*), the Third Circuit Court of Appeals addressed the constitutionality of 18 U.S.C. § 922(g)(1) as applied to Bryan Range, who had previously been convicted of making a false statement to obtain food stamps in violation of Pennsylvania law. *Id.* at 222-23.  Range sought a declaration that § 922(g)(1) violates the Second Amendment as applied to him and requested an injunction prohibiting the law's enforcement against him. *Id.* at 223.  Range asserted that but for § 922(g)(1), "he would 'for sure' purchase another deer-hunting rifle and 'maybe a shotgun' for self-defense at home." *Id.*

Applying the *Bruen* framework, the Court of Appeals ultimately determined in a "narrow" decision that § 922(g)(1) was unconstitutional as applied to Range. *Range II*, 124 F.4th at 232.  In

undertaking the historical analysis, the Court of Appeals reiterated that, post-*Bruen*, it is first necessary to decide "whether the text of the Second Amendment applies to a person and his proposed conduct." *Id.* at 225 (citing *Bruen*, 597 U.S. at 31-33). If so, the Government bears the burden of proof to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* (quoting *Bruen*, 597 U.S. at 19).

As to the "threshold question" whether Range was one of the "the people" who have Second Amendment rights, the Court of Appeals concluded that he was, thereby rejecting the contention that "felons are not among 'the people' protected by the Second Amendment." *Range II*, 124 F.4th at 226, 228. Next, the Court of Appeals determined that § 922(g)(1) regulates Second Amendment conduct because Range's request to possess a rifle to hunt and a shotgun to defend himself at home tracks the constitutional right as defined by *Heller*. *Id.* at 228 (citing *Heller*, 554 U.S. at 582). Because Range and his proposed conduct are protected by the Second Amendment, the Court of Appeals then examined whether the Government met its burden to demonstrate that stripping him of his right to possess firearms is consistent with the Nation's historical tradition of firearm regulation and concluded that it had not done so. *Id.* at 228. Because the Government failed to show that "our Republic has a longstanding history and tradition of depriving people **like Range**  of their firearms, [the Court of Appeals held that] § 922(g)(1) cannot constitutionally strip him of his Second Amendment rights." *Id.* at 232 (emphasis added). Against this legal landscape, the Court considers Defendant's challenges to 18 U.S.C. §§ 922(g)(1), 922(o)(1) and 924(c)(1)(B)(ii) as charged in the Superseding Indictment.

## IV.   DEFENDANT'S JURISDICTION CHALLENGE FAILS

Defendant contends that the "Government lacks jurisdiction to proceed with these charges" and further maintains that "the United States government lacks jurisdiction to prosecute Defendant for any firearm related offense at any time." (Docket Nos. 119 at 4; 132 at 3). In other words, Defendant claims that this Court lacks subject matter jurisdiction, which requires dismissal of Counts Two, Three, and Four of the Superseding Indictment.

Defendant relies heavily on *United States v. Cruikshank*, 92 U.S. 542 (1875), to support his argument. According to Defendant, *Cruikshank* prohibits all firearm regulations, thus the Government lacks jurisdiction to prosecute him for any firearm related offense. (Docket No. 132 at 3). In advancing this argument, Defendant contends that Congress was not empowered to regulate firearms, thus it overstepped its authority by enacting any firearm legislation. (*Id.* at 1). As a result, this Court lacks subject matter jurisdiction over Defendant's case.

Defendant's challenge to the Court's subject matter jurisdiction is unfounded. Simply put, not only is Defendant's reliance on *Cruikshank* misplaced, it also "fails to consider the 150 years of legal jurisprudence since the *Cruikshank* decision." *United States v. Woods*, Crim. No. 23-114, 2025 WL 1643700, at *3 (W.D. Pa. June 10, 2025) (rejecting argument premised on *Cruikshank* that a defendant's Second Amendment right to bear arms trumps any statute enacted by Congress prohibiting same and strips the district court of subject matter jurisdiction). That salient legal jurisprudence, discussed in Part III, *supra*, need not be repeated here. Suffice to say, controlling precedent makes clear that disarmament is justified where a felon continues to "present a special danger of misus[ing firearms]," *Rahimi*, 602 U.S. at 698, and would likely "pose[ ] a physical danger to others" if armed. *Range II*, 124 F.4th at 232. Accordingly, Defendant's contention that *Cruikshank* prohibits all firearm regulations, such that the Government lacks jurisdiction to

prosecute him for any firearm related offense is wholly without merit. As for Defendant's challenge to this Court's subject matter jurisdiction, the Third Circuit Court of Appeals has deemed a challenge to a district court's jurisdiction to adjudicate a case in which the defendant was charged with violating 18 U.S.C. § 922(g)(1) and 21 U.S.C. § 841(a)(1) to be frivolous.[5] *See United States v. Barbeau*, 2023 WL 8449247, at *2 (3d Cir. Dec. 6, 2023).

### V. DEFENDANT'S ENUMERATED POWER / PENNSYLVANIA DELEGATION OF AUTHORITY ARGUMENT LACKS MERIT

Defendant argues that "[s]ection 6120(a) of the Pennsylvania Uniform Firearms Act (1995) preempts the Federal Government from regulating firearm possession in Pennsylvania." (Docket No. 119 at 6). Defendant further contends that Congress only has regulatory power over militias, not individuals, thus the Second Amendment precludes Congress from regulating an individual's right to bear arms. (*Id.*). In Defendant's estimation, the exclusive authority to regulate firearms belongs to the states, thus he cannot be federally prosecuted for the firearms violations alleged in Counts Two, Three, and Four of the Superseding Indictment. (*Id.* at 8; *see also* Docket No. 132 at 1). Defendant is incorrect.

In *United States v. Craig*, Crim. No. 21-338, 2024 WL 449386, at *3 (W.D. Pa. Feb. 6, 2024), another court in this District rejected these very same preemption arguments in a § 922(g)(1) prosecution, explaining that state law cannot preempt federal law. To that end, the Supremacy Clause provides that the Constitution and all laws "of the United States which shall be made in

---

[5] Additionally, to the extent Defendant claims that the Government lacks standing to prosecute this action, (*see* Docket No. 119 at 48-49), he is incorrect. In support of his standing argument, Defendant maintains that his possession of a firearm does not constitute a criminal act, but rather a non-economic activity that somehow transforms this criminal case to a civil one. (*Id.* at 49). Defendant posits that the Government must claim a concrete injury to have standing to pursue a civil case, and it does not claim any such injury, thus the case must be dismissed. (*Id.*). Defendant's standing argument is flawed and previously has been rejected. *See Woods*, 2025 WL 1643700, at *10 ("The Defendant has been indicted for allegedly violating a federal *criminal* statute, not a civil one, and thus, the Government has standing to prosecute Defendant. . . .") (emphasis in original). The Court likewise rejects Defendant's standing argument here.

Pursuance thereof" are "the supreme Law of the Land." *Id.* (citing U.S. Const. art. VI, cl. 2). Consequently, the Supremacy Clause "invalidates state law that interferes with or is contrary to federal law." *Id.* (quoting *Farina v. Nokia Inc.*, 625 F.3d 97, 115 (3d Cir. 2010)). Given that the regulation of firearms is a valid exercise of the federal Government's power, *see id.*, Defendant's preemption arguments fail.

### VI. DEFENDANT'S CHALLENGES TO 18 U.S.C. § 922(g)(1)

Count Four of the Superseding Indictment charges that Defendant violated 18 U.S.C. § 922(g)(1), (*see* Docket No. 56 at 4), which makes it unlawful for any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g)(1). As stated, Defendant lodges several constitutional attacks on Count Four, including that § 922(g)(1) is unconstitutional both facially and as applied to him in violation of the Second Amendment, and that it violates the Commerce Clause.

#### A. Section 922(g)(1) is Constitutional As Applied to Defendant

Before undertaking the analysis required by *Bruen*, it bears repeating that the Court "must accept as true the factual allegations set forth in the indictment." *Huet*, 665 F.3d at 595. Here, Count Four of the Superseding Indictment alleges, and the Court accepts as true, the following: that on or about September 20, 2023, Defendant, knowing he previously had been convicted of certain crimes listed in the Superseding Indictment, each of which is punishable by imprisonment for a term exceeding one year, knowingly possessed, in and affecting interstate commerce, a 9mm semiautomatic Glock Model 19 pistol, bearing serial number VVG836, in violation of 18 U.S.C. § 922(g)(1). (Docket No. 56 at 4). As alleged in the Superseding Indictment, Defendant previously was convicted three times of possession with intent to deliver a controlled substance, in violation

10

of 35 P.S. § 780-113(a)(30), all in the Court of Common Pleas of Allegheny County, Pennsylvania. (*Id.*).

Moving on to application of *Bruen*'s framework to Defendant's case, the threshold question is whether Defendant is one of "the people" protected by the Second Amendment, despite having prior felony convictions. *See Range II*, 124 F.4th at 226. Given *Range II's* holding that felons may be among "the people" protected by the Second Amendment," *id.* at 228, individuals like Defendant who have prior felony convictions are part of "the people" under the original understanding of the right to arms.

### 1. The Second Amendment Does Not Protect Defendant's Conduct

The next question is whether the Second Amendment's plain text applies to Defendant's conduct. *Bruen*, 597 U.S. at 17. Defendant suggests that it does because he possessed the firearm for self-defense. (*See* Docket No. 119 at 4) (arguing that Defendant's constitutional rights have been violated because he was indicted for "possessing a firearm for self-defense"). The Government disagrees that the Second Amendment applies to Defendant's particular conduct because he possessed the firearm for an unlawful purpose, that is, related to drug trafficking, he did so while under court supervision, and he has multiple, prior drug trafficking convictions. (Docket No. 123 at 15, 18-30).

To start, in analyzing whether a defendant's conduct is protected, it is important to remember *Heller's* and *McDonald's* recognition that the Second and Fourteenth Amendments protect an individual's right to possess a handgun in the home for the "core lawful purpose of self-defense," *Heller*, 554 U.S. at 630, 635; *McDonald*, 561 U.S. at 767-68, as well as *Bruen's* holding that the Second and Fourteenth Amendments protect "an individual's right to carry a handgun for self-defense outside the home." *Bruen*, 597 U.S. at 10. Later, in *Range II*, the Third Circuit Court

11

of Appeals found that "the Second Amendment's plain text covers [Range's] conduct" because "Range's request – to possess a rifle to hunt and a shotgun to defend himself at home – tracks the constitutional right as defined by *Heller*." *Range II*, 124 F.4th at 228 (citations omitted).

Defendant's conduct at issue here is quite unlike possessing a handgun or shotgun for self-defense or a rifle for hunting. In addition to the § 922(g)(1) charge in Count Four of the Superseding Indictment, Defendant also is charged in Count Two with carrying a firearm during and in relation to a drug trafficking crime as charged in Count One. (Docket No. 56 at 1-2). Given that the conduct underlying Counts One, Two, and Four is all alleged to have occurred on September 20, 2023, it is reasonable to infer that Counts Two and Four refer to the same firearm. Consequently, the Court draws the reasonable inference from the allegations in the Superseding Indictment that Defendant carried the firearm related to the unlawful purpose of drug trafficking. As this Court and others previously have held, the Second Amendment does not protect the possession of a firearm to further unlawful drug trafficking, thus § 922(g)(1) is not unconstitutional as applied to Defendant. *See United States v. Rodich,* Crim. No. 23-253, 2025 WL 1383074, at *5 (W.D. Pa. May 13, 2025) (rejecting as-applied challenge to § 922(g)(1) where the defendant also was charged in same indictment with violating § 924(c) because the Second Amendment does not protect the possession of a firearm to further unlawful drug trafficking); *United States v. Mollett*, No. 3:21-cr-16-21, 2025 WL 564885, at *5 (W.D. Pa. Feb. 20, 2025) (holding same and stating that possessing a firearm in furtherance of drug trafficking "is conduct that is clearly not protected by the Second Amendment"); *United States v. Waulk,* No. 3:20-CR-31-1, 2024 WL 3937489, at *6 (W.D. Pa. Aug. 26, 2024) (holding same and observing that "possessing a firearm in furtherance of a drug trafficking crime falls firmly outside the ambit of the 'conduct' to which the Second Amendment's protection applies").

12

## 2. Even Assuming the Second Amendment Protected Defendant's Conduct, An As-Applied Challenge Still Would Fail

Even if the Second Amendment protected Defendant's conduct, the Court finds that § 922(g)(1) as applied to him is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24. This is so because Defendant presented a special danger of misusing the firearm when he possessed it as alleged in Count Four. As the Third Circuit Court of Appeals recently explained:

> [W]hile *Rahimi* and *Range II* did not purport to comprehensively define the metes and bounds of justifiable burdens on the Second Amendment right, they do, at a minimum, show that disarmament is justified as long as a felon continues to "present a special danger of misus[ing firearms]," *Rahimi*, 602 U.S. at 698, 144 S.Ct. 1889, in other words, when he would likely "pose[ ] a physical danger to others" if armed, *Range II*, 124 F.4th at 232.

*Pitsilides v. Barr*, 128 F.4th 203, 210 (3d Cir. 2025). In *Pitsilides*, the Court of Appeals observed that "some offenses may offer conclusive evidence that someone poses such a danger." *Id.* at 211. For instance, Judge Bibas previously noted that "drug dealers" may be disarmed "because their past crimes were inherently dangerous." *Folajtar v. Attorney Gen. of U.S.*, 980 F.3d 897, 922 (3d Cir. 2020) (Bibas, J., dissenting); *see also United States v. Williams*, 113 F.4th 637, 663 (6th Cir. 2024) (holding that a person convicted of a crime is "dangerous," and thus can be disarmed, if he has committed "a crime that inherently poses a significant threat of danger, including (but not limited to) drug trafficking").

As alleged in the Superseding Indictment, Defendant has three prior felony convictions of possession with intent to deliver a controlled substance.[6] (Docket No. 56 at 4). Given the nature

---

6  As the Court of Appeals has explained, "a court deciding whether an individual poses an increased risk of 'physical danger to others,' may consider not just the nature of the underlying offense, but also the felon's entire criminal history." *United States v. White*, 2025 WL 384112, at *2 (3d Cir. Feb. 4, 2025) (citing *Range II*, 124 F.4th at 222-23). Here, the Superseding Indictment alleges that Defendant has three prior state felony convictions of possession with intent to deliver a controlled substance. The Court rejects Defendant's contention that his prior state felony drug trafficking convictions do not qualify as predicate offenses for purposes of prosecuting him under §

of these convictions, Defendant presented a special danger of misusing firearms when he possessed the firearm listed in Count Four. *See Pitsilides*, 128 F.4th at 213 (although "drug dealing … [is] not necessarily violent, [it is] dangerous because [it] often lead[s] to violence") (quoting *Folajtar*, 980 F.3d at 922 (Bibas, J., dissenting)). Accordingly, § 922(g)(1) is not unconstitutional as applied to Defendant for this additional reason.

### B. Section 922(g)(1) Is Not Unconstitutional On Its Face

Defendant's facial challenge is groundless. "A facial attack tests a law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case." *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010) (citation omitted). "A party asserting a facial challenge 'must establish that no set of circumstances exists under which the Act would be valid.' " *Mitchell*, 652 F.3d at 405 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). Therefore, to prevail on his facial challenge to § 922(g)(1), Defendant must show that it "is unconstitutional in all of its applications." *Id.* (citation omitted). Defendant has failed to sustain this burden because § 922(g)(1) is not unconstitutional as applied in his case for reasons discussed above. Moreover, the Third Circuit Court of Appeals otherwise has identified numerous situations in which § 922(g)(1) prosecutions did not violate the Second Amendment. *See, e.g.*, *United States v. Quailes*, 126 F.4th 215, 221-24 (3d Cir. 2025) (defendants who were on state parole or probation did not have right to possess firearms, thus their prosecutions under § 922(g)(1) did not violate Second Amendment); *White*, 2025 WL 384112, at *2 (Second Amendment did not preclude prosecution under § 922(g)(1) of individual with prior convictions for possession with

---

922(g)(1). (*See* Docket No. 119 at 47). Under § 922(g)(1), any person "who has been convicted *in any court* of, a crime punishable by imprisonment for a term exceeding one year" is prohibited from possessing a firearm. 18 U.S.C. § 922(g)(1) (emphasis added). Defendant's state convictions were for violations of 35 P.S. § 780-113(a)(30) related to cocaine, which is punishable by a statutory maximum term of ten years' imprisonment. 35 P.S. § 780-113(f)(1.1). As such, Defendant's prior state convictions qualify as predicate offenses for purposes of the instant § 922(g)(1) prosecution.

intent to distribute controlled substances, aggravated assault, and carrying an unlicensed firearm); *Moore*, 111 F.4th at 273 (holding that convict completing his sentence on supervised release did not have right to possess firearm, therefore prosecution under § 922(g)(1) did not violate Second Amendment). Therefore, Defendant's facial challenge to § 922(g)(1) fails because he has not demonstrated that it violates the Second Amendment in all of its applications.[7] *See United States v. Woznichak,* Crim. No. 21-242, 2023 WL 7324442, at *7 (W.D. Pa. Nov. 7, 2023) (citing *United States v. Blackshear*, Crim. No. 23-159, 2023 WL 5985284, at *3 (E.D. Pa. Sept. 14, 2023) (rejecting facial challenge to § 922(g)(1) where the defendant "[could not] show that § 922(g)(1) is unconstitutional as applied to his case, let alone in all circumstances")).

### C. Section 922(g)(1) Does Not Violate the Commerce Clause

Defendant asserts that § 922(g)(1) is an invalid exercise of Congress' Commerce Clause power. (*See* Docket No. 119 at 4). Given that Defendant's Commerce Clause argument is foreclosed by existing precedent, *see United States v. Singletary*, 268 F.3d 196, 204-05 (3d Cir. 2001) (rejecting argument that Congress exceeded authority given by Commerce Clause when enacting § 922(g)(1); *United States v. Penn*, 870 F.3d 164, 165 n.2 (3d Cir. 2017) (reaffirming *Singletary*), dismissal of Count Four of the Superseding Indictment is not warranted on this basis.

### VII. DEFENDANT'S CHALLENGES TO 18 U.S.C. § 922(o)(1)

Count Three of the Superseding Indictment charges that Defendant violated 18 U.S.C. § 922(o)(1), (*see* Docket No. 56 at 3), which makes it unlawful for any person to possess a machinegun. As alleged in Count Three, Defendant possessed a 9mm Glock Model 19 pistol equipped with a "machinegun conversion device," commonly referred to as a "Glock switch," as

---

[7] As another member of this Court aptly stated, "[g]iven the numerous binding decisions recognizing that at least *some* restrictions under 922(g)(1) are (or may be) valid, the seeming reluctance to put this argument to bed is perplexing." *United States v. Graves*, 2025 WL 1784933, at *1 (W.D. Pa. June 29, 2025) (Bissoon, J.) (emphasis in original).

15

well as the machinegun conversion device itself, in violation of § 922(o)(1). (*Id*. at 3). Defendant argues that Count Three should be dismissed because § 922(o)(1) is unconstitutional both facially and as applied to him in violation of the Second Amendment. (Docket Nos. 119 at 50-53; 131 at 3-5; 132 at 2-4).

Defendant's challenges to § 922(o)(1) fail because it is well-established that "dangerous and unusual weapons" are outside the Second Amendment's scope. To that end, well over 80 years ago, the Supreme Court held that the Second Amendment does not protect short-barreled shotguns. *See United States v. Miller*, 307 U.S. 174, 178 (1939). More recently, in *Heller*, the Supreme Court reaffirmed that "the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns. That accords with the historical understanding of the scope of the right." *Heller*, 554 U.S. at 625. Underscoring that point, the Supreme Court instructed that "dangerous and unusual weapons," do not fall within the ambit of the Second Amendment. *Id.* at 625, 627.

As discussed above, *Bruen* did not displace *Heller*. *See supra* at 5. Rather, *Bruen* reiterated *Heller's* finding that it was "fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons' that the Second Amendment protects the possession and use of weapons that are 'in common use at the time.' " *Bruen*, 597 U.S. at 21 (quoting *Heller*, 554 U.S. at 627) (internal quotation marks omitted). Bound by this Supreme Court precedent, the Court agrees with numerous others in this Circuit and throughout the Nation which have held that "the Second Amendment does not protect machineguns because they are not in common use for lawful purposes such as self-defense." *United States v. Berger*, 715 F. Supp. 3d 676, 686 (E.D. Pa. 2024) (collecting decisions that have so held). As in *Berger*, Defendant's argument here that he has a right to possess a machinegun "fl[ies] in the face of *Heller*, *Bruen*, and every other decision

that has ever addressed whether the Second Amendment protects an individual's possession of machineguns." *Id.* at 693. Accordingly, the Court rejects Defendant's constitutional challenges to § 922(o)(1).[8]

## VIII. DEFENDANT'S CHALLENGE TO 18 U.S.C. § 924(c)

Count Two of the Superseding Indictment charges that Defendant violated 18 U.S.C. §§ 924(c)(1)(A)(i) and 924(c)(1)(B)(ii), (*see* Docket No. 56 at 3), which makes it unlawful for any person to carry a machinegun during and in relation to any crime of violence or drug trafficking crime. As alleged in Count Two, Defendant is charged with carrying a firearm, which was also a machinegun, during and in relation to the drug trafficking crime charged in Count One of the Superseding Indictment. (Docket No. 56 at 2). Relying on *Cruikshank*, Defendant argues that Count Two should be dismissed because the exclusive authority to regulate firearms belongs to the states, thus § 924(c)(1)(B)(ii) is an invalid exercise of Congressional authority and the Government lacks jurisdiction to prosecute him for that offense. (Docket No. 132 at 1-2).

The Court already addressed and rejected Defendant's *Cruikshank* argument in Part IV, *supra*. To repeat, Defendant's contention that *Cruikshank* prohibits all firearm regulations such that the Government lacks jurisdiction to prosecute him for any firearm related offense, including § 924(c) offenses, is wholly without merit. Furthermore, the Third Circuit Court of Appeals has found that the Second Amendment does not encompass the right to possess or carry a firearm in furtherance of a drug trafficking crime. *See United States v. Cash*, 2023 WL 6532644, at *3 (3d Cir. Oct. 6, 2023) ("*Bruen* further supports the conclusion that possession of a firearm in furtherance of a drug crime is not covered by the text of the Second Amendment."). Accordingly,

---

8   The Court also rejects Defendant's contention that the Department of Justice's settlement of litigation with respect to forced reset triggers supports his position that he has a constitutional right to possess a machinegun. (*See* Docket No. 132 at 3-4). The fact that the Department of Justice settled litigation concerning forced reset triggers does nothing to alter the analysis herein that machineguns are outside the Second Amendment's scope.

§ 924(c)(1)(B)(ii) does not violate the Second Amendment and dismissal of Count Two is unwarranted.

### IX. DEFENDANT'S SECOND, FIFTH, NINTH, AND TENTH AMENDMENT RIGHTS HAVE NOT BEEN VIOLATED

The Court has addressed Defendant's Second Amendment claim, and will not repeat its analysis here, other than to simply state its ruling that his Second Amendment rights have not been violated. Likewise, Defendant has not established a violation of his Fifth, Ninth, and Tenth Amendment rights.

First, Defendant's Ninth Amendment claim, (*see* Docket No. 119 at 37-39), lacks legal merit. The Ninth Amendment provides, "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX. As explained in *Woods*, "the Ninth Amendment indicates that even if a specific right is not listed in the Constitution, it does not mean that that right is not protected." *Woods*, 2025 WL 1643700, at *8. However, in the context of a § 922(g)(1) prosecution, the Ninth Amendment is inapplicable because the right to bear arms is an enumerated right contained in the Second Amendment. *See id.* The Ninth Amendment "does not [otherwise] independently provide a source of individual constitutional rights." *Clayworth v. Luzerne Cnty.*, 513 F. App'x 134, 137 (3d Cir. 2013); *see also Bell v. United States*, Civ. No. 13–5533, 2013 WL 5763219, at *3 (E.D. Pa. Oct. 24, 2013) (holding that "the Ninth Amendment does not establish an individual right to bear arms") (citing *United States v. Baer*, 235 F.3d 561, 564 (10th Cir. 2000); *Ross v. Fed. Bureau of Alcohol, Tobacco & Firearms*, 807 F. Supp. 2d 362, 372 (D. Md. 2011)).

Next, the Fifth Amendment states in relevant part, "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. According to Defendant, because Congress violated the Second and Ninth Amendments by enacting § 922(g)(1),

18

it has "inevitably" violated the Fifth Amendment by depriving felons of life, liberty, and property without due process of law. (Docket No. 119 at 40-41). Given that the Court already has ruled that Defendant's Second and Ninth Amendment rights have not been infringed, his Fifth Amendment argument, which is premised on a Second and Ninth Amendment violation, likewise fails. Moreover, to the extent that Defendant argues that the process pursuant to which § 922(g)(1) was enacted by Congress was somehow flawed and therefore violates the Fifth Amendment, he has not offered any legal authority to support that argument. (Docket No. 119 at 43-44). Furthermore, as controlling precedent previously discussed makes clear, § 922(g)(1) repeatedly has been held constitutional.

Finally, Defendant is incorrect that the instant § 922(g)(1) prosecution violates his Tenth Amendment rights. (*See* Docket No. 119 at 44). The Tenth Amendment provides, "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const., amend. X. "If Congress acts under one of its enumerated powers . . . there can be no violation of the Tenth Amendment." *United States v. Parker*, 108 F.3d 28, 31 (3d Cir. 1997) (citation omitted). In light of the Court's holding that § 922(g)(1) is the product of a legitimate exercise of congressional authority under the Commerce Clause, (*see supra* at 15), Defendant's Tenth Amendment argument fails.

## X. <u>DEFENDANT IS INCORRECT THAT THE RIGHT TO BEAR ARMS IS UNLIMITED</u>

Defendant argues that the right to bear arms is fundamental to the scheme of ordered liberty, thus suggesting that his right to bear arms is unlimited. (Docket No. 119 at 4). Defendant is incorrect, as Supreme Court and Third Circuit precedent make clear that the right to bear arms is not unlimited. *See supra*, Part III. This Court is bound by those decisions.

## XI. RIGHT TO BEAR ARMS UNDER PENNSYLVANIA LAW

Finally, Defendant "invokes his indefeasible rights to bear arms to protect life, liberty, and property as a citizen of this sovereign Commonwealth of Pennsylvania." (Docket No. 119 at 4). As already explained, any right to bear arms under Pennsylvania law does not preempt the federal Government's authority to regulate firearms. *Farina*, 625 F.3d at 115 (The Supremacy Clause "invalidates state law that interferes with or is contrary to federal law.") (internal quotation marks and citation omitted).

## XII. CONCLUSION

Defendant's challenges to 18 U.S.C. §§ 922(g)(1), 922(o)(1), and 924(c)(1)(B)(ii) all lack legal merit. Accordingly, Defendant's Dismissal Motions, (Docket Nos. 119, 132), are DENIED in their entirety.

An appropriate Order follows.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

Date: October 16, 2025


cc/ecf:  All counsel of record

Miquann Morgan-Graham (via U.S. mail)
DOC No. 179627
Allegheny County Jail
950 Second Avenue
Pittsburgh, PA  15219